UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CRIMINAL ACTION NO. 2:13-CR-44-DLB-EBA

UNITED STATES OF AMERICA,                                        PLAINTIFF/RESPONDENT,

V.                           **RECOMMENDED DISPOSITION**

LOUIS STEVENSON,                                                    DEFENDANT/MOVANT.

*** *** *** ***

On April 8, 2014, Louis Stevenson was sentenced to 192 months of imprisonment after pleading guilty to possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). At sentencing he was found to be a career offender because he was believed to have a criminal history involving two prior felony offenses for drug trafficking. The first counted offense was a 1994 conviction in Hamilton County, Ohio for trafficking in marijuana. [R. 59, p. 10, ¶ 39]. The second counted offense was a 1999 conviction for Conspiracy to Distribute a Controlled Substance in the United States District Court, Cincinnati, Ohio. [R. 59, p. 11, ¶ 41]. As a result, his Guideline sentencing range was determined to be 188-235 months.

In this action, Stevenson challenges his sentence, maintaining that he should not have received the career offender enhancement because his 1994 Ohio drug conviction was not a trafficking offense, but was for possession of a bulk amount of marijuana, in violation of Ohio Revised Code § 2925.03(A)(4). Because his prior conviction is not a controlled substance offense, he argued that he was misclassified as a career offender under the sentencing guidelines. [R. 34, at 12-14]. On March 15, 2019, the Court held its first evidentiary hearing in this matter. At the outset, both Stevenson and the United States stipulated that Stevenson's prior 1994 Ohio

1

conviction was not a trafficking offense, but rather a possessory offense. [R. 90 at 4]. All parties then agreed that his designation as a career offender was in error. Thus, a properly calculated sentencing range under the Guidelines, without the career offender designation, should have reflected a recommended sentencing range of 84-105 months. Now fully briefed, the issue now before the Court is whether this action is barred by the statute of limitations.

## ANALYSIS

### A. Timeliness and Equitable Tolling

**Timeliness**

A federal prisoner may file a motion under 28 U.S.C. § 2255 within one year from the latest of four dates:

    **(1)** the date on which the judgment of conviction becomes final;

    **(2)** the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

    **(3)** the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    **(4)** the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Stevenson concedes that his motion was not filed within one year of the date on which his conviction became final but argues that it is timely because he was diligently pursuing his rights, and due to equitable tolling. The government has continuously argued that Stevenson's petition is

untimely and that there are no circumstances which can excuse or otherwise justify the untimeliness of his petition.[1]

A conviction becomes final when the time for direct review has passed. *Sanchez-Castellano v. United States*, 358 F.3d 424, 426 (6th Cir. 2004). "[W]hen a federal criminal defendant does not appeal to the court of appeals, the judgment becomes final upon the expiration of the period in which the defendant could have appealed to the court of appeals." *Johnson v. United States*, 457 F.App'x. 462, 465 (6th Cir. 2012). Stevenson had fourteen days from the entry of judgment (April 8, 2014) within which to file a notice of appeal, but he did not. Fed. R. App. P. 4(b)(1)(A). Stevenson's conviction became final on April 22, 2014, and Stevenson would normally have one year from that date to file a timely habeas petition. Pursuant to the prison mailbox rule, his petition filed on June 13, 2016, was filed well over two years past the statute of limitations and it is untimely unless he succeeds in showing either that the facts on which his claim is based were not later discovered under 2255(f)(4), or that his motion is saved by the doctrine of equitable tolling.

First, Stevenson contends that his petition was timely filed within one year of the date on which the facts supporting his claim could have been discovered through the exercise of due diligence, under 28 U.S.C. § 2255(f)(4). Here, Stevenson bears the burden of proving "the date on which the facts supporting the claim ... could have been discovered through the exercise of due diligence." § 2255(f)(4); *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006). The Sixth Circuit has explicitly held that § 2255(f)(4) applies to the date that the defendant discovers the vital facts underlying a § 2255 motion, not the date the defendant discovers that the facts have ripened into a

---

[1] The statute of limitations is an affirmative defense. The party that asserts that defense—in this case, the United States—has the initial burden of demonstrating that the statute has run. *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002).

3

legal claim. *Webb v. United States*, 679 F.App'x. 443, 448 (6th Cir. 2017). Other circuits have agreed. *See, e.g.*, *United States v. Messer*, 749 F.App'x. 719, 723 (noting petitioner was not entitled to relief under § 2255 (f)(4) "because he had "discovered the error in the PSR … years before he filed his § 2255 motion"); *Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012) ("The 'due diligence clock starts ticking when a person knows or through diligence could discover the vital facts, regardless of when their legal significance is actually discovered."); *Anjulo–Lopez v. United States*, 541 F.3d 814, 818 (8th Cir. 2008) (Due diligence does not require repeated exercises in futility or exhaustion of every imaginable option, but it does require "reasonable efforts."). *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (amended Jan. 22, 2001) ("Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance."). Moreover, the Sixth Circuit has adopted the proposition that a court must first determine:

> when a duly diligent person in petitioner's circumstances would have discovered that no appeal had been filed. After that date, petitioner was entitled to further delay (whether in actually making the discovery, or in acting on a previously made discovery, or for any other reason whatsoever), so long as he filed his petition within one year of the date in which the discovery would have been made in the exercise of due diligence

*Moore v. United States*, 438 F.App'x. 445, 447 (6th Cir. 2011) (quoting *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000); *DiCenzi*, 452 F.3d at 470 (quoted with alteration).

Unfortunately, Stevenson's testimony from the evidentiary hearing reveals that he had been aware that his 1994 Ohio conviction was for possession, rather than Trafficking in Marijuana at the time he was sentenced.

> Q. Let me ask a simpler question. When you went through your court proceeding in 1993, did you know what you were convicted of doing?
>
> A. Yes.

4

Q. And what were you convicted of doing?

A. I was convicted of possession of marijuana.

Q. And you knew that in 1993?

A. Right.

Q. And you knew that when you were charged in this case in 2014?

A. Right. That's correct.

Q. You knew that your conviction was for possession of marijuana when you plead guilty in this case; is that true?

A. That's not true.

Q. All right. When did you find that out?

A. I didn't find that out until 2016.

Q. Until 2016. All right. But you knew it in 1993?

A. Right.

* * *

A. I was convicted of, yeah, possession of marijuana.

Q. And you knew that it wasn't trafficking; is that right?

A. No. It was dropped down to possession of marijuana.

Q. And you knew that in 1993?

A. Yeah. That's what it started out trafficking and it was dropped down to possession of marijuana.

Q. And you knew that while your case was pending; is that right?

A. Yeah, I knew it was possession.

Q. So while your case was pending –

THE COURT: Can you clarify which case you're talking about?

Q. 1993. The one that we conceded doesn't [sic] no longer qualify. That's the one at issue.
You knew while your case was pending that that 1993 case, that 1993 conviction was only for possession of marijuana; is that right?

A. Right

Q. And despite that, you signed a plea agreement saying that it was for trafficking; is that right?

A. I signed a plea agreement said it was trafficking under my counsel's advice.

Q. But you knew it was factually wrong; is that right?

A. No. I was under the impression that they was using the trafficking. I was under the impression that they was using the trafficking.

Q. What trafficking?

A. The trafficking. It stated trafficking on there.

Q. Right and you knew that was wrong.

A. I was confused at the time. I can't say that I was aware of that you could use either one. I didn't know.

Q. I'm not talking about what the legal rules are. I was talking about what was your knowledge about what that actual conviction was. Did you know that that actual conviction from 1993 was for marijuana possession and not marijuana trafficking? Did you know that?

A. No, I didn't.

Q. All right. You didn't know that it was – didn't you just testify that you knew it was for possession?

A. For marijuana possession. Marijuana trafficking. You 're confusing me.

Q. I'm trying to clarify. Which one? What did you know when you were convicted?

THE COURT: Which conviction are we talking about?

Q. 1993.

6

A. I knew it was two charges. I knew it was trafficking, trafficking and marijuana and possession of marijuana. I knew it was two charges. So I can't really remember. I knew it was two charges. It was a marijuana charge and trafficking charge.

Q. And what did you know about what you were convicted of doing in 1993?

A. I was convicted of possession of marijuana.

Q. And you knew that, correct?

A. Right.

Q. You're not confused. You understand right now as of 1993 when you were convicted of that case, you knew it that it was only for possession?

A. Correct.

Q. Knowing that it was only for possession, did you tell the Court when you pled guilty that the prior conviction from 1993 was only for possession?

A. No, I didn't.

Q. When you reviewed your presentence – let me strike that, please.
Did you review your presentence report with your attorney before your sentencing?

A. Yes, I did.

Q. Your presentence report in Paragraph 39 regarding that 1993 conviction in Paragraph 39, it says you were convicted of trafficking distribution of drugs. You've already testified that you reviewed that presentence report. Did you review Paragraph 39?

A. Yes, I did.

Q. And Paragraph 39, you knew that it said you were convicted in 1993 of trafficking not possession, correct?

A. That's not accurate. See, that's where I got confused at. See that's why I said – it said trafficking. So I though I was, you know what I'm saying, the trafficking part that's what confused me about the trafficking and the possession part. That's what totally just threw me off balance and confused me on everything.

Q. So you knew that was a problem –

7

> A. I know it said trafficking in there somewhere. And from my understanding from my counsel, he made me believe that 1993 was a trafficking instead of possession. That's why I was confused there.
>
> Q. So you were aware that there was a conflict between your memory of that actual conviction and what was in your presentence report, you knew about that conflict before you were sentenced?
>
> A. I knew something wasn't right. That's my whole point about my testimony. I knew something wasn't right about it.

[R. 107, pp. 18-24].

This case is like *Johnson v. United States*, 544 U.S. 295 (2005). Johnson received an enhanced sentence as a career offender based on previous state convictions. *Johnson,* 544 U.S. at 298. After one of the convictions was vacated, he moved for relief under § 2255 to vacate his enhanced sentence. The Court denied his petition, finding that the state-court vacatur was a fact for purposes of § 2255(f)(4), but that Johnson had not diligently pursued it. *Id.* at 308–11. Johnson waited more than three years after his judgment became final before pursuing vacatur; however, the date of judgment in Johnson's federal case was "the moment to activate due diligence." *Id*. at 309, 311. The Court explained that "diligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize that he has an interest in challenging the prior conviction with its potential to enhance the later sentence." *Id.* at 308. This, Johnson failed to show.

Likewise, Stevenson's claim was untimely filed. Stevenson's testimony at the latest evidentiary hearing reveals that Stevenson was aware of the facts which would support his claim, that his 1994 Ohio conviction was for a possessory rather than a trafficking offense, at the time judgment was entered in this case. As the law is clear that a statute of limitations begins to run when a movant know the facts, and not necessarily the legal significance of those facts, underlying a claim, Stevenson's time to file this action began to run when he knew the underlying facts of his

8

claim: that his prior Ohio conviction was for possession of marijuana rather than trafficking. *See Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012) ("The 'due diligence clock starts ticking when a person knows or through diligence could discover the vital facts, regardless of when their legal significance is actually discovered.").

Although not timely filed, the Court must next consider whether equitable tolling will save his motion.

**Equitable Tolling**

Stevenson claims that the deadline for filing his motion should be equitably tolled in this case to save his motion. The Petitioner bears the burden of showing that he is entitled to equitable tolling. *Id.* at 642; see also *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003); *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). Ignorance of the law, even by an incarcerated pro se petitioner, is not grounds to toll the statute. *Johnson*, 544 U.S. at 295; *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012); *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2003). Equitable tolling should only be used "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (internal quotation marks omitted). Since the AEDPA statute of limitations is not jurisdictional, this tolling doctrine is applicable in rare circumstances. *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010) (citing *Day v. McDonough*, 126 S. Ct. 1675, 1681 (2006)); *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).

The Sixth Circuit has held that a petitioner is entitled to equitable tolling only if he shows that: "(1) he has been pursuing his rights diligently, and that (2) some extraordinary circumstance stood in his way and prevented timely filing." *Jefferson v. United States*, 730 F.3d 537, 549 (6th Cir. 2013) (quoting *Holland*, 560 U.S. at 649 (2010)). The second element of this two-part test is

9

satisfied "only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Menominee Indian Tribe v. United States*, 136 S. Ct. 750, 756 (2016). "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Jurado v. Burt*, 337 F.3d 638, 643 (6th Cir. 2003). Thus, where a petitioner seeks to prove that some extraordinary circumstance justifies equitable tolling, he must demonstrate that the extraordinary circumstance affected his ability to timely file a habeas petition. *Robertson*, 624 F.3d at 785. For example "[c]ourts have consistently held that general allegations of placement in segregation and lack of access to legal materials are not exceptional circumstances warranting equitable tolling, especially where the petitioner does not sufficiently explain why the circumstances he describes prevented him from timely filing a habeas petition." *Andrews v. United States*, 2017 WL 6376401, at *2 (6th Cir. December 12, 2017). Additionally, this Court has previously found that equitable tolling was inapplicable when a petitioner was transferred to state custody and waited six months after returning to federal custody before seeking collateral relief. *United States v. Magiera*, No. 12-32, 2014 WL 5364799, at *3-4 (E.D. Ky. Oct. 21, 2014). In so concluding, the Court reasoned that "institutional transfers, periods of confinement under more restrictive conditions than the general population, and a lack of ready access to legal paperwork and law libraries are not 'extraordinary circumstances'; they are the usual incidents of prison life." *Id*. at *3 (internal citations and quotations omitted).

Stevenson testified that he was conducting research on his case from 2014 – 2015 but filed nothing in the matter until 2016. When he was asked about his ability to write letters and was questioned why he waited until 2016 to contact Kimberly Heidel, the United States Probation Officer who prepared the presentence report, and why he had not contacted the Ohio state court prior to 2016. He admitted that he could have (but did not), and that he was not aware of the one-

10

year statute of limitations. [R. 107 at 25-28]. The government then inquired into Stevenson's experience with institutional lockdowns, and how that affected his overall ability to receive mail. Stevenson was able to estimate a few occurrences from 2014-2016—when he was temporarily inhibited from sending and receiving any outgoing and incoming mail— but ultimately admitted to not having made any outside-attempts of contact, prior to writing Ms. Heidel. [*Id.* at 33-34].

As a result, Stevenson has failed to demonstrate facts necessary to invoke the doctrine of equitable tolling and his petition is untimely. The evidence demonstrates that he was aware this his state court conviction was a possessory rather than a trafficking offense, and he shows no extraordinary circumstance that affected his ability to file a timely petition, and he is not entitled to equitable tolling. See *Robertson*, 624 F.3d at 785.

## CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 336; 28 U.S.C. § 2253(c)(2). In cases where a district court has rejected a petitioner's constitutional claims on the merits, the defendant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when the denial is based on a procedural ruling, the defendant must show that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

Under this standard, because reasonable jurists might disagree on whether equitable tolling of the limitations period would apply, a certificate of appealability should issue. *See Miller-El v.*

11

*Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is further recommended that a certificate of appealability be issued in this matter.

## CONCLUSION

Therefore, IT IS RECOMMENDED that the Court DENY the petitioner Louis Stevenson's § 2255 habeas relief. [R. 34].

Particularized objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service of the same or further appeal is waived. 18 U.S.C. § 636(b)(1); *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Bituminous Cas. Corp. v. Combs Contracting Inc.*, 236 F. Supp. 2d 737, 749–50 (E.D. Ky. 2002). Generalized objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(1).

This the 27th day of December 2019.

Signed By:
*Edward B. Atkins*   EBA
United States Magistrate Judge