**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CRIMINAL ACTION NO. 13-44-DLB-EBA**
**CIVIL ACTION NO. 16-105-DLB-EBA**

**UNITED STATES OF AMERICA**                                      **PLAINTIFF**


**v.**               **ORDER ADOPTING RECOMMENDED DISPOSITION**


**LOUIS STEVENSON**                                           **DEFENDANT**

**\*\*\*  \*\*\*  \*\*\*  \*\*\***

In April 2014, Louis Stevenson was sentenced to 192 months' imprisonment for distribution of cocaine.  Over two years later, in 2016, Stevenson filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, alleging, among other things, that his attorney was ineffective for failing to object to Defendant's designation as a career offender under the Sentencing Guidelines.  (Doc. # 34).  The Government concedes that Stevenson was wrongly sentenced as a career offender but contends that Stevenson's Motion is time-barred.

Following a pair of evidentiary hearings, United States Magistrate Judge Edward B. Atkins issued a Recommended Disposition, wherein he agreed with the Government and recommended that Stevenson's Motion be denied as untimely.  (Doc. # 111). Stevenson, through appointed counsel, has filed Objections to the Recommended Disposition (Doc. # 114), to which the United States has responded (Doc. # 118). Stevenson has also submitted a reply memorandum (Doc. # 122)  Because the evidence demonstrates that Stevenson's Motion is untimely and, furthermore, that equitable tolling

does not apply, Defendant's Objections are **overruled**.  The Recommended Disposition is **adopted** as the findings of fact and conclusions of law of the Court as modified herein.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

In 2013, Stevenson was indicted for two counts of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1).  (Doc. # 1).  The Court appointed Frank Mungo to represent Stevenson under the Criminal Justice Act.   (Doc. # 13).  Stevenson later pled guilty to Count I of the Indictment in exchange for the dismissal of Count II.  (Docs. # 21 and 30 at 1).  The Probation Office in its Presentence Report ("PSR") recommended that Stevenson be classified as a "career offender" under the Federal Sentencing Guidelines.  (Doc. # 59 at 5).  In relevant part, the Career Offender Guideline provides that a defendant's sentence is enhanced if "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense" and "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1(a).  A "controlled substance offense" is defined as an "offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense."  *Id.* § 4B1.2(b).  In addition to the instant conviction for the offense of cocaine distribution, the Probation Office identified two of Stevenson's prior convictions that involved controlled substance offenses.   The first was a 1999 federal conviction for conspiracy to distribute cocaine, while the second was a 1994 Ohio conviction for "Trafficking in Marijuana (transportation)" under Ohio Rev. Code § 2925.03(A)(2).  (Doc. # 59 at 10-11).  Stevenson did not contest

2

his career offender designation, (*see* Doc. # 27 at 2), which raised his sentencing range under the Guidelines from 84-105 months to 188-235 months.  (Docs. # 27 at 2 and 111 at 2).  This Court's judgment, entered April 8, 2014, imposed a term of 192 months' imprisonment, to run consecutively to Stevenson's undischarged federal and state sentences.  (Doc. # 32 at 2).  Stevenson did not file a direct appeal.

As it turns out, Stevenson was improperly designated as a career offender. Unbeknownst to the Probation Office, the U.S. Attorney's Office, and Stevenson's own defense attorney, Stevenson's 1994 state charge of "Trafficking in Marijuana (transportation)" had been dropped in exchange for a conviction on a lesser count of possession of a bulk amount of marijuana under Ohio Rev. Code § 2925.03(A)(4).[1]  (*See* Doc. # 34-1).  The PSR had in fact indicated the opposite, stating that the bulk possession charge had been dropped.  (Doc. # 59 at 10).  Unlike the crime of marijuana transportation under § 2925.03(A)(2), possession of a bulk amount of marijuana under § 2925.03(A)(4) is not a controlled substance offense for purposes of the federal Sentencing Guidelines. *See United States v. Montanez*, 442 F.3d 485, 491-92 (6th Cir. 2006).

On June 20, 2016, Stevenson filed a Motion to Vacate his sentence under 28 U.S.C. § 2255, raising several claims, including that he was incorrectly sentenced as a career offender.  (Doc. # 34 at 14-18).  Stevenson attached to his Motion a copy of records from his 1994 state-court proceeding that clearly showed the nature of Stevenson's plea agreement, resulting in a conviction on only the bulk possession charge.  (Doc. # 34-1). The United States opposed the Motion on the merits and raised the procedural defenses

---

[1]      Section 2925.03(A)(4), which no longer exists in the Ohio Code, criminalized the knowing "possess[ion] [of] a controlled substance in an amount equal to or exceeding the bulk amount, but in an amount less than three times that amount."

of untimeliness, procedural default, and waiver.  (Doc. # 40).  After the Magistrate Judge recommended denying the Motion to Vacate, (Doc. # 36), Stevenson moved on December 22, 2016 to add a claim of ineffective assistance of counsel based on his attorney's failure to challenge the wrongful career offender designation, (Docs. # 44 and 44-1).  In a January 23, 2017 Order, this Court granted Stevenson's Motion to Supplement, adopted the Magistrate Judge's Report and Recommendation, and denied Stevenson's Motion to Vacate on the merits.  (Doc. # 45 at 9).  In doing so, the Court rejected Stevenson's career-offender argument but without addressing the state-court records Stevenson had attached to his Motion.  (*Id.* at 7).  The Court later denied Stevenson's Motion to Alter Judgment.  (Doc. # 54).

On appeal of the Order denying Stevenson's Motion to Vacate, "[t]he government concede[d] that an Ohio conviction for possessing a bulk amount of marijuana does not qualify as a controlled substance offense, and it move[d] to remand the case so the district court may consider in the first instance whether Stevenson's motion to vacate was timely and, if necessary, the impact of the state court records submitted by Stevenson."  (Doc. # 62 at 3).  Citing *Montanez*, the Sixth Circuit agreed that "Stevenson's prior Ohio conviction for possessing a bulk amount of marijuana does not qualify as a 'controlled substance offense.'"  (*Id.*).  Further, the Sixth Circuit stated, "it appears that Stevenson's trial counsel may have rendered ineffective assistance by failing to challenge Stevenson's career offender designation, given that *Montanez* was decided over eight years before Stevenson was sentenced, and, absent the career offender enhancement, Stevenson's guidelines range would have been significantly reduced."  (*Id.*).  The Sixth Circuit

4

remanded for the district court's consideration of the state-court records Stevenson submitted as well as the Government's procedural defenses.  (*Id.*).

Upon remand, the United States continued to oppose Stevenson's Motion on timeliness grounds.  (Doc. # 66 at 2).  Over the Government's objection, (Doc. # 77), the Magistrate Judge ordered an evidentiary hearing on the issues of whether Stevenson's Motion to Vacate was untimely and whether attorney Mungo had been ineffective for failing to challenge Stevenson's career-offender designation.  (Docs. # 76 at 4 and 81).  The record was later reopened, and a second hearing was held that focused solely on the timeliness issue.  (*See* Docs. # 96 and 102).  The Magistrate Judge appointed Douglas Weigle to represent Stevenson at the evidentiary hearings.  (Doc. # 76).

At the hearings, Stevenson testified that he had known all along that his 1994 charge for transporting marijuana had been dropped in exchange for a conviction on a lesser charge of marijuana possession, but did not share this fact with his attorney, the Probation Office, or the Court.  (Docs. # 90 at 33 and 107 at 18-20, 35).  According to Stevenson, Mungo's repeated assurances that the career-offender enhancement applied led him to operate under the assumption that his prior crime of marijuana possession qualified as a controlled substance offense.  (Doc. # 107 at 23).  Stevenson did note to Mungo his disagreement with the career-offender designation, but Stevenson's objection was based solely on the mistaken idea that the 1994 conviction was too old to be counted as a career offender predicate offense.  (Docs. # 90 at 20 and 107 at 5-6).

Mungo, for his part, testified that he consulted the online record of Stevenson's 1994 conviction available through his bar subscription on the Hamilton County Clerk's Office website.  (Doc. # 90 at 30-31).  The online record, which was presented as an

exhibit at the evidentiary hearing, (*id.* at 31), identifies two charges, one for "TRAFFICKING-SHIP, TRNSPORT, DIST 2925-03A2 ORCN" and another for "TRAFFICKING-POSS 1-3 TIME BULK 2925-03A4 ORCN," (Doc. # 40-1 at 1). Below each charge is listed, "Disposition: 8/3/1994 – Department of Corrections." (Doc. # 40-1 at 1). The online record also includes a docket sheet containing a line item indicating entry of judgment on August 3, 1994 with a corresponding sentence of two to five years' imprisonment. (*Id.* at 2). Nowhere in the online record does it state that either of the charges had been dismissed or that there had been a plea agreement. Accordingly, Mungo testified that he understood the document to support the fact that Stevenson had been convicted on both charges. (Doc. # 90 at 32). According to Mungo, the actual judgments of conviction are normally available to view online, but Stevenson's 1994 judgment was not because it was too old. (*Id.* at 31). Therefore, to view Stevenson's original judgment, Mungo would have had to obtain an archived paper copy from the Hamilton County Clerk. (*Id.* at 39). Mungo further testified that he received from the Probation Office a summary of Stevenson's criminal record from the National Crime Information Center ("NCIC") purportedly corroborating Stevenson's conviction on both counts.[2] (*Id.*). Based on the evidence in his possession at the time, Mungo was led to believe that Stevenson's 1994 conviction could be used as a predicate offense for career offender purposes. (*Id.* at 32).

At the second evidentiary hearing, Stevenson provided testimony specifically relating to the issue of diligence in preparing his case. Stevenson testified that he began researching his claim shortly after he was sentenced in 2014. (Doc. # 107 at 7, 27-28).

---

[2]     The NCIC report itself is not included in the record.

It was not until 2016, however, that Stevenson discovered *United States v. Montanez*, which then prompted him to order his state-court judgment from the Hamilton County Clerk. (*Id.* at 10-11). Stevenson also detailed the hurdles he faced in preparing his case, including a ninth-grade education and several prison transfers between 2014 and 2016. (Doc. # 107 at 6-8, 29-31). In addition, Stevenson testified that he had limited access to the law libraries in the facilities where he was housed due to lockdowns and demand from other inmates. (*Id.* at 8-10, 29-33). In particular, Stevenson reported being able to use the prison law library on average two to three times per week for two to three hours at a time. (*Id.* at 9-10). Stevenson estimated that lockdowns closed the library five to ten times per year, although it was unclear from his testimony how long the library would remain closed during these periods. (*Id.* at 31). Further, Stevenson recalled that he was unable to send or receive mail for two to three months during his stay at FCI Gilmore in 2016. (*Id.* at 32-33).

In his Recommended Disposition, the Magistrate Judge concluded that Stevenson's Motion to Vacate was untimely. (Doc. # 111). The Magistrate Judge found that Stevenson's conviction became final on April 22, 2014, fourteen days after entry of judgment. (*Id.* at 3). Stevenson's Motion, filed on June 13, 2016, was more than one year late under the presumptive one-year statute of limitations in 28 U.S.C. § 2255(f)(1). The Magistrate Judge rejected Stevenson's argument that his Motion was timely under § 2255(f)(4), which provides that the statute of limitations begins to run on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." (Doc. # 111 at 8). Based on Stevenson's testimony that he knew his 1994 conviction was for possession of marijuana, the

Magistrate Judge reasoned that Stevenson "was aware of the facts which would support his claim [ ] that his 1994 Ohio conviction was for a possessory rather than a trafficking offense, at the time judgment was entered in this case." (*Id.*).  In the Magistrate Judge's view, it mattered not whether Stevenson knew that his possession conviction did not qualify as a predicate offense under the Career Offender Guideline: "the law is clear that a statute of limitations begins to run when a movant knows the facts, and not necessarily the legal significance of those facts, underlying a claim." (*Id.*) (citing *Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012)).

The Magistrate Judge also rejected Stevenson's argument that the statute of limitations should be equitably tolled.  (*Id.* at 11).  According to the Magistrate Judge, Stevenson's testimony about lockdowns at prison facilities where he stayed did not establish his inability to request records from the Ohio courts or otherwise send or receive mail.  (*Id.* at 10-11).  Stevenson had thus failed to demonstrate the requirement for equitable tolling that "some extraordinary circumstance stood in [the movant's] way and prevented timely filing." (*Id.*) (quoting *Jefferson v. United States*, 730 F.3d 537, 549 (6th Cir. 2013)).  The Magistrate Judge did, however, recommend that the Court issue a Certificate of Appealability as to the equitable tolling issue.  (*Id.* at 11-12).  As the Magistrate Judge recommended denying Stevenson's Motion on timeliness grounds, he did not reach the merits of Stevenson's ineffective-assistance-of-counsel claim.

Stevenson, through counsel, filed Objections to the Recommended Disposition.[3] (Doc. # 114).  The United States filed a Response (Doc. # 118), to which Stevenson replied (Doc. # 122).  The Objections are now ripe for the Court's review.

---

[3]     Stevenson also filed letters of support from family members (Docs. # 125 and 126) and a supplemental *pro se* brief (Doc. # 123).  The Court is not required to consider *pro se* arguments

## II.    STANDARD OF REVIEW

The district court reviews de novo "any part of the magistrate judge's disposition that has been properly objected to."   Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).   The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."   28 U.S.C. § 636(b)(1)(c). The Sixth Circuit has held that "only those specific objections to the magistrate's report made to the district court will be preserved for appellate review."   *Carson v. Hudson*, 421 F. App'x 560, 563 (6th Cir. 2011) (alteration omitted) (quoting *Souter v. Jones*, 395 F.3d 577, 585 (6th Cir. 2005)).

## III.    OBJECTIONS

Stevenson objects to the Magistrate Judge's determination that his § 2255 Motion is time-barred and that equitable tolling does not apply.   However, the record supports the conclusion that Stevenson could, with due diligence, have discovered the facts necessary to bring his § 2255 Motion more than one year before it was filed.   Accordingly, Stevenson's Motion is time-barred even under the more generous time limit provided in § 2255(f)(4).   Moreover, as the Magistrate Judge properly determined, Stevenson has not presented evidence that an "extraordinary circumstance" excused his untimely filing, and thus the statute of limitations should not be equitably tolled.

First, the Magistrate Judge did not err in concluding that Stevenson's Motion under § 2255 was untimely.   A one-year limitations period applies to motions brought under § 2255.   28 U.S.C. § 2255(f).   The limitation period shall run from the latest of:

(1)  the date on which the judgment of conviction becomes final;

---

made by represented defendants, *United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009), and declines to do so here.

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).  It is undisputed that Stevenson did not file within one year of April 22, 2014—the date his judgment became final.  Thus, Stevenson must satisfy one of the other conditions for starting the limitations period on a later date.  Here, Stevenson relies upon § 2255(f)(4), "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  (Doc. # 114 at 2).

Unfortunately for Stevenson, the factual predicate of his ineffective assistance claim was within his grasp shortly after he was sentenced—more than a year before he filed his § 2255 motion.  Under the categorical approach applicable to career-offender determinations, "only the fact of the prior conviction and the statutory definition of the predicate offense are used to determine whether a prior conviction is a controlled substance offense."  *Montanez*, 442 F.3d at 489 (internal quotation marks omitted).  Stevenson was already aware that one of his charges in 1994 was dropped in exchange for a conviction on a lesser marijuana-possession offense.[4]  (Doc. # 107 at 18-24).  Armed

---

[4]     The Magistrate Judge reasoned that this fact was all Stevenson needed in order to have brought his § 2255 Motion, and thus the clock started running as soon as Stevenson's judgment became final.  (Doc. # 111 at 8-9).  However, under the categorical approach, an offense meets the definition of a "controlled substance offense" if it has *as an element* the distribution of or intent to distribute controlled substances.  *Montanez*, 442 F.3d at 492.  Thus, absent the statutory language, Stevenson's mere knowledge that he was convicted of some type of possessory offense would not necessarily have indicated whether his prior crime qualified as a "controlled substance offense."  Indeed, as discussed below, courts have previously viewed the "possession"

with this knowledge, Stevenson would have needed only to locate the name and statute number associated with this possession offense to confirm that it did not qualify under the Career Offender Guideline.  The statute number and description of Stevenson's offense of conviction were listed in the state-court judgment Stevenson eventually ordered from the Hamilton County Clerk.  (*See* Doc. # 34-1).  As a public record, such a document is presumed to be discoverable in a timely manner by an inmate through the exercise of due diligence.  *See Anjulo-Lopez v. United States*, 541 F.3d 814, 819 (8th Cir. 2008); *Lee v. Curtin*, No. 1:09–cv–66, 2012 WL 405508, at *2 (W.D. Mich. Feb. 8, 2012).  Indeed, Stevenson admitted at the evidentiary hearing that he had the opportunity to order his 1994 judgment at any time after he was convicted and sentenced for his federal offense, (Doc. # 90 at 23), and that once he decided to obtain it, it took at most "a week or two" for his family to retrieve it from the Hamilton County Clerk, (Doc. # 107 at 11).  Accordingly, even taking into account "the reality of the prison system," as is required, *DiCenzi v. Rose*, 452 F.3d 465, 470 (6th Cir. 2006) (internal quotation marks omitted), Stevenson could reasonably have discovered the facts supporting his ineffective-assistance claim shortly after the entry of final judgment in his federal case.  As Stevenson's Motion came more than two years after that date, his Motion is untimely.

To his credit, Stevenson acted quickly to retrieve his state-court record once he discovered the law governing his claim in *United States v. Montanez*.  (*See* Doc. # 122 at 3).  As the Sixth Circuit has stated, however, "§ 2255(f)(4) is directed at the discovery of new facts, not newly-discovered law."  *Phillips v. United States*, 734 F.3d 573, 580 (6th Cir. 2013); *but see DiCenzi*, 452 F.3d at 470-72 (holding that the habeas equivalent to

---

crime Stevenson was convicted of as containing a distribution element such that it qualified as a predicate offense under the Career Offender Guideline.  *See* p. 13, *infra*.

§ 2255(f)(4) in 28 U.S.C. § 2254(d)(1)(D) is triggered when a petitioner demonstrates the exercise of due diligence in failing to discover a statutory right to appeal).

In *Webb v. United States*, 679 F. App'x 443, 448 (6th Cir. 2017), the Sixth Circuit rejected the argument that under § 2255(f)(4), the clock starts only after the movant becomes aware that he has a viable legal claim.  Other circuits have reached similar conclusions.  The Ninth Circuit has held, for example, that for purposes of 28 U.S.C. § 2244(d)(1)(A)—the statutory analogue to § 2255(f)(4) for habeas petitioners in state custody—"[t]he 'due diligence' clock starts ticking when a person knows or through diligence could discover the vital facts, regardless of when their legal significance is actually discovered."  *Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012); *accord Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000).  While it is both understandable and unfortunate that Stevenson, who is incarcerated and lacks a formal legal education, would struggle to timely identify the law supporting his ineffective-assistance claim, ignorance of the law simply cannot form the basis for extending the time to file under § 2255(f)(4).

Stevenson maintains that he acted with sufficient diligence because he worked continuously to develop his claim from the time he was sentenced until the time he discovered his state-court records.  (Doc. # 114 at 3).  However, "[t]hat a petitioner does not in fact learn sooner of the factual predicate of his new claim does not, *ipso facto*, establish that a diligent person in the petitioner's shoes also would not have done so sooner."  *McDonald v. Warden, Lebanon Corr. Inst.*, 482 F. App'x 22, 29 (6th Cir. 2012).  Furthermore, if diligence under § 2255(f)(4) were solely a function of effort, a defendant could delay the start of the statute of limitations indefinitely by endlessly researching his claim.  That is not what the law allows.

Stevenson also argues that his appointed counsel misled him into thinking that his 1994 bulk possession conviction was in fact a qualifying offense under the Career Offender Guideline.  (Doc. # 114 at 2); (*see also* Doc. # 107 at 23).  Stevenson makes a fair point.  Based on his counsel's assurances that he qualified as a career offender, Stevenson could have easily assumed (wrongly) that his bulk possession conviction under Ohio Rev. Code § 2925.03(A)(4) counted as a "controlled substance offense" under U.S.S.G. § 4B1.1(a).  In fact, up until the decision in *United States v. Montanez*, unpublished decisions of the Sixth Circuit had done just that.  *Montanez*, 442 F.3d at 489-91 (citing *Gibbs v. United States*, 3 F. App'x 404 (6th Cir. 2001) and *United States v. Coteat*, 133 F. App'x 177 (6th Cir. 2005)).  These earlier unpublished opinions reasoned that because simple possession was punished in a different section of the Ohio code, bulk possession of marijuana under § 2925.03 was, by implication, aimed at drug dealers, not users.  *Gibbs*, 3 F. App'x at 406.  This interpretation was bolstered by two other aspects of the statutory scheme, namely § 2925.03's title: "drug trafficking offenses" as well as the availability of a personal use defense for those charged under § 2925.03, which the court in *Gibbs* read to imply the existence of a distribution element for crimes included within § 2925.03.  *Id.*

Misdirection from his attorney may have created challenges for Stevenson; but Stevenson possessed certain advantages that would have allowed a prisoner in his circumstances to have overcome those challenges.  For one, Stevenson harbored doubts from the start about the correctness of his career-offender classification, particularly with respect to his 1994 conviction.  (Doc. # 107 at 23-27).  Stevenson also knew that his 1994 charge for trafficking had been dropped in exchange for a conviction on a possessory

offense, which provided an important clue that his conviction may not have qualified.  (*Id.* at 18-24).  In addition, Stevenson was aware that his 1994 conviction triggered his career-offender enhancement.  (*See id.* at 105).  Taking this information together, a reasonable person in Stevenson's position would have been expected to obtain the 1994 conviction records in building a claim involving a wrongful career-offender designation.  Moreover, Stevenson presumably knew all along of the existence of his state-court records and demonstrated that he knew how to retrieve them.  Accordingly, this is not a case where a defendant's ineffective counsel left him without any clue as to the factual basis of his claim.  *See DiCenzi*, 452 F.3d at 470.  Nor is this a case where the facts supporting the prisoner's claim were hidden as a result of government misconduct.  *See Jefferson v. United States*, 730 F.3d 537, 546 (6th Cir. 2013).  Stevenson has thus failed to demonstrate due diligence under § 2255(f)(4).  His Objection on this basis is **overruled**.

In addition, Stevenson cannot benefit from the judge-made doctrine of equitable tolling because he has not demonstrated that extraordinary circumstances prevented him from filing on time.  "A petitioner is entitled to equitable tolling 'only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'"  *Jefferson*, 730 F.3d at 549 (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).  Regardless of whether Stevenson was diligent, nothing in the record indicates that Stevenson faced "extraordinary circumstances" as that term is defined in the caselaw.

Stevenson's strongest argument is that his trial attorney's asserted ineffectiveness rose to the level of extraordinary circumstances.  (*See* Doc. # 114 at 4-6).  Yet, as explained in more detail below, it is questionable whether attorney Mungo was even

constitutionally ineffective, and in any event, Mungo's failure to discover that Stevenson's 1994 transportation of marijuana charge had been dropped resembles the type of ordinary attorney error typically deemed insufficient to warrant equitable tolling.

In *Holland v. Florida*, the Supreme Court held that ineffective assistance of counsel may in some instances constitute an extraordinary circumstance that, along with a defendant's exercise of reasonable diligence, warrants equitable tolling.  560 U.S. at 651, 653-54; *see also Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 462 (6th Cir. 2012) (dictum).  Not all attorney misconduct, however, is sufficient.  Only "professional misconduct that . . . amount[s] to egregious behavior [ ] create[s] an extraordinary circumstance that warrants equitable tolling."  *Holland*, 560 U.S. at 651.  A "'garden variety claim' of attorney negligence," for example, will not suffice.  *Id.* at 652.  The instance of ineffective assistance of counsel alleged in *Holland* was "far more serious," essentially amounting to abandonment.  *See id.* at 637, 652-53; *see also id.* at 659 (Alito, J., concurring).  The Court went on to cite other cases of qualifying attorney misconduct, including one in which the attorney had "effectively abandoned" his client and another where the attorney had "failed to perform an essential service, to communicate with the client, and to do basic legal research."  *Id.* at 651 (internal quotation marks omitted).  The alleged misconduct in the present case, consisting of a failure to retrieve archived physical records that would have contradicted those available online, is simply not of comparable severity and cannot fairly be described as "egregious."

Sixth Circuit precedent similarly militates against a finding of extraordinary circumstances in this case.  In cases decided both before and after the Supreme Court's ruling in *Holland*, the Sixth Circuit has taken the position that "a petitioner's reliance on

the unreasonable and incorrect advice of his or her attorney is not a ground for equitable tolling." *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) (citing *Jurado v. Burt*, 337 F.3d 638, 644-45 (6th Cir. 2003)); *accord Giles v. Beckstrom*, 826 F.3d 321, 325-26 (6th Cir. 2016).   Furthermore, in cases where the Sixth Circuit has recognized the availability of equitable tolling on the ground of attorney misconduct, the attorney in question had abandoned the client either as a result of incompetence or mental incapacitation.  *See Robertson v. Simpson*, 624 F.3d 781, 785-86 (6th Cir. 2010); *Gordon v. England*, 354 F. App'x 975, 979-81 (6th Cir. 2009); *Cantrell v. Knoxville Cmty. Dev. Corp.*, 60 F.3d 1177, 1180 (6th Cir. 1995).  Mungo's representation certainly does not approach the realm of abandonment.

In a more recent case, the Sixth Circuit left open the possibility that a habeas petitioner could demonstrate extraordinary circumstances absent a showing of abandonment by his counsel.  *Nassiri v. Mackie*, 967 F.3d 544, 549-50 (6th Cir. 2020). The petitioner in *Nassiri* alleged that his attorney "disregarded [his] express concern about [the attorney's] incorrect calculation of his filing deadline" and "flouted requests to file his petition on time or early."  *Id.* at 549.  The court held that these facts, as alleged, could constitute extraordinary circumstances and remanded to the district court to give the petitioner an opportunity to further develop his equitable tolling argument.  *Id.* at 550. While Stevenson testified that he expressed disagreement with Mungo about his career offender designation, Stevenson did not alert Mungo to the possibility that his marijuana transportation charge had been dropped, instead insisting (erroneously) that his 1994 conviction did not count because it was too old.  (Docs. # 90 at 20 and 107 at 5-6).  The instant case is distinguished from *Nassiri* because Mungo was justified in ignoring the

16

concerns Stevenson voiced.  Further, Stevenson never requested that Mungo object to his classification as a career offender, (Doc. # 90 at 16-17), and, thus, unlike in *Nassiri*, Stevenson's attorney did not disregard his client's express instructions.

The other hurdles Stevenson faced in filing, including his *pro se* status, minimal education, sporadic access to the prison law library, and prison lockdowns and transfers, likewise do not suffice to show "extraordinary circumstances."  Stevenson all but concedes that each of these asserted hardships on their own would not be enough to demonstrate extraordinary circumstances.  (*See* Doc. # 114 at 5).  Stevenson nonetheless contends—without citation of authority—that the cumulative effect of these hardships compels a different conclusion.  (*Id.*)  However, the Sixth Circuit has frequently rejected the idea that difficulties of the kind Stevenson describe—either individually or in combination—constitute extraordinary circumstances in the equitable tolling context. *See, e.g.*, *Keeling*, 673 F.3d at 464 (holding that "pro se status and lack of knowledge of the law" are not sufficient to constitute extraordinary circumstances); *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d at 750-52 (6th Cir. 2011) (concluding that prisoner's *pro se* status, limited law-library access, and inability to access trial transcripts were not enough to warrant equitable tolling); *Cobos v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (deciding that prisoner was not entitled to equitable tolling based on his ignorance of the law and legal process, his lack of education, his functional illiteracy, or his reliance on prison paralegals).  Accordingly, Stevenson's Objection based on equitable tolling is **overruled** for the reasons stated herein.

Finally, even were the Court to reach the merits, Stevenson's case hardly presents a surefire claim of ineffective assistance of counsel.[5]  To prevail on his claim, Stevenson must show that his counsel provided deficient performance that resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).   There is little question that Stevenson was prejudiced.   Had counsel detected the error in Stevenson's PSR, he presumably would have succeeded in reducing Stevenson's advisory guideline range substantially.   That, in turn, would have likely reduced Stevenson's sentence, which is sufficient to show prejudice under *Strickland*.  *Cf. United States v. Baker*, 559 F.3d 443, 454 (6th Cir. 2009) (finding prejudice in similar circumstances on plain error review).

Stevenson, though, has a much tougher task of showing deficient performance. To start, "[a] court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance."  *Richardson v. Palmer*, 941 F.3d 838, 856 (6th Cir. 2019) (quoting *Harrington v. Richter*, 562 U.S. 86, 104 (2011)).  The Sixth Circuit has stated that "an attorney's failure to object to an error in the PSR's calculation of the guidelines—if left uncorrected by the district court—can be grounds for finding deficient performance." *Howard v. United States*, 743 F.3d 459, 464 (6th Cir. 2014) (dictum).  In *Arredondo v. United States*, 178 F.3d 778, 788-89 (6th Cir. 1999), the Sixth Circuit held that an attorney's failure to object to a plainly erroneous drug quantity attributed to the defendant

---

[5]      While the Government at the evidentiary hearing conceded that Stevenson's Guidelines range had been miscalculated, it did not appear to concede that the miscalculation of Stevenson's Guidelines range was the result of ineffective assistance of counsel.  The distinction is significant in this case because a defendant's standalone claim that his misclassification as a career offender led to a higher advisory Guidelines range is not cognizable on collateral review.  *Bullard v. United States*, 937 F.3d 654, 657 (6th Cir. 2019).  Accordingly, Stevenson's only reviewable claim is for ineffective assistance of counsel, which remains contested.

in the PSR could amount to deficient performance and remanded the case for further factfinding.  In doing so, the court laid down the rule that "[a] failure to investigate, participate in, and prepare for the sentencing proceedings fails to satisfy an objective standard of reasonable representation and therefore falls below Sixth Amendment standards for effective assistance of counsel."  *Id.* at 788.  Yet, "a complete failure to investigate is different from failing to 'dig deeper.'"  *Caudill v. Conover*, 881 F.3d 454, 463 (6th Cir. 2018) (quoting *Foust v. Houk*, 655 F.3d 524, 536 (6th Cir. 2011)).

Where, as in this case, "a habeas claim does not involve a failure to investigate but, rather, petitioner's dissatisfaction with the degree of his attorney's investigation, the presumption of reasonableness imposed by *Strickland* will be hard to overcome.'"  *Hodges v. Colson*, 727 F.3d 517, 542 (6th Cir. 2013) (quoting *Campbell v. Coyle*, 260 F.3d 531, 552 (6th Cir. 2001)).  In contrast to the attorney in *Arredondo*, who "made no efforts to ensure that the district court established an adequate factual basis for the sentence," 178 F.3d at 787-88, Mungo took not one, but two steps to verify that Stevenson's 1994 conviction was a qualifying controlled substance offense.  Mungo first consulted the database on the Hamilton County Clerk's Office website, and second, referred to an NCIC report that corroborated the same information.  (Doc. # 90 at 31-32).

Furthermore, in evaluating the reasonableness of counsel's conduct, "[t]he court must consider not only the evidence known to counsel, but also whether that evidence 'would lead a reasonable attorney to investigate further.'"  *Hodges*, 727 F.3d at 542 (quoting *Wiggins v. Smith*, 539 U.S. 510, 527 (2003)).  Neither of the two sources Mungo consulted suggested that further investigation was necessary.  And despite Mungo's having gone over the PSR with Stevenson, (Docs. # 90 at 34, 38 and 107 at 22), nothing

Stevenson told Mungo appeared to undermine Mungo's mistaken understanding about his marijuana conviction.  *Compare United States v. Russell*, 221 F.3d 615, 621 (4th Cir. 2000) (holding that counsel was ineffective for not verifying the validity of his client's prior convictions after having been told multiple times by his client that the prior convictions had been "overturned").

The relative difficulty in spotting the mistake in Stevenson's PSR further distinguishes this case from *Arredondo* and others, in which attorneys performed ineffectively by failing to object to errors that were clearly apparent on the face of the PSR.  Whereas Mungo would have had to obtain a physical copy of Stevenson's state-court judgment in order to detect the error in the PSR, "a casual reading of the PSR" in *Arredondo* "would have revealed that it was too conclusory to provide an adequate basis for sentencing under § 841(b)."  178 F.3d at 787.  Similarly, in *Spearman v. United States*, 860 F. Supp. 1234, 1244-45 (E.D. Mich. 1994) (cited in *Arredondo*), the vagueness with which the PSR described the drug quantity involved in the offense as well as the defendant's other relevant conduct was so clearly apparent from the face of the document that defense counsel's failure to object constituted deficient performance.

This case is also very different from those where attorneys unreasonably failed to object to sentencing errors which were readily apparent upon a straightforward application of the Sentencing Guidelines or other applicable law.  *See, e.g.*, *United States v. Curtis*, 360 F. App'x 413, 414-15 (4th Cir. 2010) (per curiam); *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003); *United States v. Horey*, 333 F.3d 1185, 1187 (10th Cir. 2003); *Weinberger v. United States*, 268 F.3d 346, 357-58 (6th Cir. 2001); *Mann v. United States*, 66 F. Supp. 3d 728, 745 (E.D. Va. 2014); *Smith v. United States* 871 F. Supp.

251, 254-55 (E.D. Va. 1994); *see also United States v. Soto*, 132 F.3d 56, 59 (D.C. Cir. 1997)  ("Whether lawyers get the Guidelines wrong by misinterpreting the implication of a particular provision or by failing to raise a potentially helpful provision altogether, such drastic missteps clearly satisfy *Strickland*'s first test.") (internal parentheses omitted).  In *United States v. Horey*, for instance, defense counsel was ineffective for not having objected to the defendant's classification as a career offender, which was based in part on the "undisputedly" non-qualifying offense of cocaine possession.  333 F.3d at 1186-87.  In *United States v. Curtis*, the PSR contained an incorrect Guidelines range due to a simple misapplication of the sentencing table in the Guidelines manual.  360 F. App'x at 414.  The Fourth Circuit in that case vacated the defendant's sentence, holding that "[c]ounsel's failure to object to the erroneous Guidelines range was objectively unreasonable, given the ease with which counsel should have spotted the error."  *Id.* at 414-15.

Finally, an argument could be made that the description of Stevenson's 1994 conviction in the PSR should have tipped Mungo off to the fact that there was a plea agreement involving dismissal of charges in Stevenson's 1994 case, a fact that would have contradicted the records Mungo reviewed.  The PSR incorrectly noted that Stevenson's bulk possession charge had been dropped, when in fact it was his marijuana transportation charge that had been dropped.  (Doc. # 59 at 10).  But this argument is weakened by the fact that the PSR reported that the *non-qualifying* offense had been dismissed, thereby supporting Stevenson's status as a career offender.  Also, the PSR made no mention of the existence of a plea agreement.  Of course, in retrospect, the proper course of action would have been for counsel to obtain the original judgment of

conviction to confirm that Stevenson had in fact been convicted of a qualifying offense. Counsel's performance, however, "must be assessed according to the time of representation, rather than viewed with the benefit of hindsight." *Hanna v. Ishee*, 694 F.3d 596, 612 (6th Cir. 2012). With this requirement in mind, it can hardly be said that Mungo's representation fell below an objective standard of reasonableness.[6]

## IV.   CERTIFICATE OF APPEALABILITY

A certificate of appealability ("COA") is warranted in this case on the three issues discussed above, namely (1) whether Stevenson's § 2255 Motion is untimely under the later starting date in 28 U.S.C. § 2255(f)(4); (2) whether equitable tolling applies; and (3) whether Stevenson's counsel was constitutionally ineffective. A COA shall issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard for a COA "does not require a showing that the appeal will succeed," and instead requires "something more than the absence of frivolity." *Miller-*

---

[6]     On October 19, 2018, after the Court of Appeals had remanded the case and before the issuance of the second Recommended Disposition, Stevenson filed a Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(2), raising two claims. (Doc. # 71). In his first claim, Stevenson argues that he is entitled to resentencing based on Amendment 782 issued by the U.S. Sentencing Commission. That Amendment—passed after Stevenson was sentenced and made retroactive by Amendment 788—reduced the base offense level for drug crimes listed in § 2D1.1(c) of the Guidelines, including Stevenson's offense of cocaine distribution. *See United States v. Braden*, 643 F. App'x 531, 533 (6th Cir. 2016); U.S.S.G. § 2D1.1(c)(7); (Doc. # 59 at 5). Stevenson cannot benefit from Amendment 782, however, because he was sentenced under the Career Offender Guideline, which is unaffected by Amendment 782 and provides a base offense level higher than the one otherwise applicable under § 2D1.1(c)(7). *See Braden*, 643 F. App'x at 534-35 (collecting cases). Stevenson's second claim likewise lacks merit. He argues that his misclassification as a career offender resulted in a higher recommended sentence. But just as this claim is not cognizable under 28 U.S.C. § 2255, *see* n.5, *supra*, neither is it cognizable under 18 U.S.C. § 3582(c)(2). Modification of a prisoner's sentence under § 3582(c)(2) is limited to situations where a prisoner was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." "[A] § 3582(c)(2) motion is not the proper means of relitigating issues that were decided in the original sentencing." *United States v. Tennille*, 365 F. App'x 613, 615 (6th Cir. 2010) (citing *United States v. Metcalfe*, 581 F.3d 456, 459 (6th Cir. 2009)). Accordingly, Stevenson's Motion to Reduce Sentence (Doc. # 71) is **denied**.

*El v. Cockrell*, 537 U.S. 322, 337-38 (2003) (internal quotation marks omitted). Considering the record and the arguments put forth by the parties, that lenient standard is met in this case.  A COA will accordingly be issued.

## V.   CONCLUSION

For the reasons stated herein, **IT IS ORDERED** as follows:

(1)    The Recommended Disposition of the United States Magistrate Judge (Doc. # 111) is **ADOPTED** as the findings of fact and conclusions of law of the Court as modified herein;

(2)    Defendant's Objections (Doc. # 114) are **OVERRULED**;

(3)    Defendant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. # 34) is **DENIED**;

(4)    Defendant's Motion to Reduce Sentence (Doc. # 71) is **DENIED**;

(5)    This matter is **DISMISSED with prejudice** and **STRICKEN** from the Court's active docket;

(6)    For the reasons set forth herein and in the Magistrate Judge's Recommended Disposition (Doc. # 111), the Court determines that there would be arguable merit for an appeal in this matter and, therefore, **A CERTIFICATE OF APPEALABILITY SHALL ISSUE** on each of the three (3) issues set forth on the preceding page;

(7)    Defendant is deemed indigent for purposes of any appeal; and

(8)    A separate Judgment will be filed herewith.

This 17th day of December, 2020.



Signed By:

*David L. Bunning*

United States District Judge

J:\DATA\ORDERS\Covington Criminal\2013\13-44 Order Adopting Recommended Disposition.docx